UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| ERNEST RAY LESTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:08-CV-328 |
| | ) | (PHILLIPS / SHIRLEY) |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This case is before the undersigned to address Plaintiff's Motion for Judgment on the Pleadings [Doc. 13] and Defendant Commissioner's Motion for Summary Judgment [Doc. 15]. Plaintiff Ernest Ray Lester seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), and the final decision of the Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On March 6, 2003, the Plaintiff filed an application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423(d), 1381a, and 1382c, claiming disability as of October 1, 2001. [Tr. 294.] After his application was denied initially and also denied upon reconsideration, Plaintiff requested a hearing. On June 9, 2004, a hearing was held before ALJ Jack B. Williams to review determination of Plaintiff's claim. [Tr. 400.] On September 24, 2004, ALJ Williams found that Plaintiff was disabled as of November 21, 2002, but not prior; the claim for supplemental security income was allowed but the claim for disability insurance benefits was denied. [Tr. 307-09.] On January 25, 2005, the

Appeals Council vacated the ALJ's decision in its entirety and remanded for a new hearing. [Tr. 36-39.] The Appeals Council remanded the case to: investigate the possibility of substantial gainful activity/self-employment income since the alleged onset date of January 1, 1997; further evaluate medical opinions from Dr. William S. Broome, III, ("Dr. Broome"), Dr. Jeffery S. Summers ("Dr. Summers") and the State Agency; further evaluate the claimant's credibility; further assess the Plaintiff's residual functional capacity; and to obtain input from a vocational expert.

A second hearing was held before ALJ Williams on May 24, 2005. [Tr. 421-41.] On August 11, 2005, ALJ Williams found that the Plaintiff was not disabled at any time during the relevant period. [Tr. 320-21.] On August 12, 2006, the Appeals Council again vacated the ALJ's decision, and remanded the claim for a hearing before a new ALJ. [Tr. 350-52.] In its second remand, the Appeals Council affirmed the onset date of October 1, 2001, but vacated and remanded the decision for consideration of a supplemental submission by Dr. Broome, which was completed on February 8, 2005. Further, the Appeals Council acknowledged that in its last remand it did not instruct the ALJ to address the possibility that the Plaintiff suffered from obesity or a mental impairment. [Tr. 351]. However, the Appeals Council suggested that the ALJ examine these possible impairments upon remand.

On October 25, 2006, a third hearing was held before ALJ Robert L. Erwin. [Tr. 442-67.] On January 16, 2007, ALJ Erwin found that the Plaintiff was not disabled during the relevant period of time. [Tr. 10-20.] The Appeals Council denied Plaintiff's request for review, finding no grounds for reviewing the ALJ's decision. Thus, the decision of the ALJ became the final decision of the Commissioner. Plaintiff now seeks judicial review of the Commissioner's decision.

**I.     ALJ FINDINGS**

The ALJ made the following findings:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2001.

2. The claimant has not engaged in substantial gainful activity since January 1, 1997,[1] the alleged onset date (20 CFR 404.1520(b), (404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: hemochromatosis, history of cervical arthritis, lumbar spine degenerative disc disease and carpal tunnel surgery. (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual function capacity to perform light work and occasionally stand, squat, kneel, balance, stoop, crawl, stand and/or walk 6 hours in an 8-hour workday for 30 to 45 minutes, should not do any more than occasional overhead reaching with either arm, and could not twist or turn his head.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on December 26, 1957 and was 39 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

---

[1] As previously noted, the ALJ decision dated August 11, 2005 and the Appeals Council decision dated August 12, 2006 found the onset date to be October 1, 2001. The Plaintiff thereafter amended his alleged onset date to October 1, 2001. [Tr. 425 and Doc. 14 at 1]. ALJ Erwin acknowledged this change, but nonetheless stated in his findings that the alleged onset date was January 1, 1997.
    Because ALJ Erwin's decision that the claimant had not been under a "disability," as defined in the Social Security Act, from January 1, 1997, through January 16, 2007, includes the actual alleged period of disability, the mistake appears to be harmless. Further, neither party has made an allegation of error based upon this mistake, and therefore, the Court will not further address the issue.

3

> 9. The vocational expert testified claimant did not have transferable skills.
>
> 10. Considering the claimant's age, education, work experience, and residual function capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c) and 416.966).
>
> 11. The claimant has not been under a "disability," as defined in the Social Security Act, from January 1, 1997 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 15-20.]

## II.     DISABILITY ELIGIBILITY

An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a). "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.

4

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

## III. STANDARD OF REVIEW

In reviewing the Commissioner's determination of whether an individual is disabled, the Court is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence in the record to support the ALJ's findings. Longworth v. Comm'r of Soc. Sec., 402 F.3d 591, 595 (6th Cir. 2005). If the ALJ's findings are supported by substantial evidence based upon the record as a whole, they are conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 534 (6th Cir. 2001) (quoting Richardson v. Perales,

402 U.S. 389, 401 (1971)). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Serv.,46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV.    ANALYSIS

On appeal, Plaintiff argues that substantial evidence does not support the ALJ's disability determination. Plaintiff contends the ALJ erred by failing to give appropriate weight to the opinions of the Plaintiff's longtime physician, and further erred by not explaining his finding that the Plaintiff's statements were not entirely credible. [Doc. 14 at 4-5.] The Commissioner, in response, contends substantial evidence supports the ALJ's weighing of the evidence. [Doc. 16 at 10.]

**A.    Failure to Afford Proper Weight to the Opinion of William Broome, M.D.**

The Plaintiff argues that the ALJ should have given the opinion of William Broome, M.D., ("Dr. Broome") additional weight. [Doc. 14 at 5.] The Plaintiff alleges that the ALJ did not state the weight afforded Dr. Broome's opinion, although he maintains that it is clear from the ALJ's opinion that Dr. Broome's opinion was not accorded great or controlling weight. [Doc. 14 at 5.] The Plaintiff reasons that because Dr. Broome's opinion is based on fifteen years of regular examinations with Plaintiff, he is able to bring a unique perspective to the process. [Doc. 14 at 5.] As a result, Plaintiff contends that substantial deference should have been given to the medical opinion of Dr. Broome. [Doc. 14 at 5.] The Plaintiff claims that according to Dr. Broome's assessment of Plaintiff's condition, the "limitations would preclude any work available in substantial

6

numbers and thus require a finding of disability." [Doc. 14.]

The Commissioner argues that throughout his decision, the ALJ provided sufficient reasoning for rejecting Dr. Broome's opinion. [Doc. 16.] The Commissioner responds that the ALJ reasonably found Dr. Broome's opinion of disability was not adequately supported by and was inconsistent with the record evidence. See 20 C.F.R. §§ 404.1527(d)(2), (3) and (4).

The Plaintiff's contention is that the ALJ did not afford the opinion of his treating physician, in this case the opinion of Dr. Broome, the special deference to which it is entitled. A treating physician is one who has provided the claimant with medical treatment or evaluation and who has an ongoing treatment relationship with him or her. Generally, the "medical opinion of the treating physician is to be given substantial deference, and if that opinion is not contradicted, complete deference must be given." Walker v. Sec'y of Health & Human Serv., 980 F.2d 1066, 1070 (6th Cir. 1992). However, the ultimate decision of disability rests with the ALJ, id. (citing King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984)), and accordingly, the ALJ is not bound by the opinions of the treating physician as long as the ALJ sets forth a basis for rejecting it. See Shelman v. Heckler, 821 F.2d 316, 321 (6th Cir. 1987) (citing Fife v. Heckler, 767 F.2d 1427, 1437 (9th Cir. 1985) ("If the ALJ wishes to disregard the opinion of the treating physician, he must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record, even where the treating physician's opinion is controverted by the Secretary's consultant").

7

If the treating physician's opinion as to the nature and severity of an impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it will be given controlling weight. 20 C.F.R.§§ 404.1527(d)(2) and 416.927. Where an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R.§§ 404.1527(d)(2) and 416.927. Consistency with other evidence of record is a condition precedent to a treating physician's opinion receiving controlling weight. See id. The Court of Appeals for the Sixth Circuit "has consistently stated that the Secretary is not bound by the treating physician's opinions, and that such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence." Bogle v. Sullivan, 998 F.2d 342, 347-48 (1993).

Dr. Broome also submitted two opinion forms evaluating the Plaintiff's physical capacity and also submitted two letters addressing the Plaintiff's condition. On September 19, 2003, Dr. Broome composed the first letter, addressed to whom it may concern, which stated the following:

> Ernest Lester has widespread degenerative arthritis throughout his spine. These changes cause much pain and limit the mobility from his neck down into his low back. He is unable to perform activities of bending, stooping, lifting and walking more than short distances. I believe he is currently disabled from any form of gainful employment. If there are any questions, please feel free to contact me.

[Tr. 252.] The ALJ did not specifically address this letter in his opinion. However, the ALJ did

8

consider Dr. Broome's later letter, the substance of which is nearly identical to the substance of this letter and is discussed below.

On November 24, 2003, Dr. Broom completed a document entitled "Medical Opinion Form (physical)." Therein, Dr. Broom opined that Plaintiff could stand or walk for one hour in an eight-hour day for ten minutes at a time, sit for two hours out of an eight-hour day, lift or carry 1-5 pounds frequently, lift or carry 1-10 pounds occasionally, and lift or carry 11-20 pounds infrequently. [Tr. 243]. He also indicated that the Plaintiff could occasionally bend at the waist, stand on a hard surface, and use his hands for fine manipulation; he indicated that the Plaintiff could never reach above his shoulders. Dr. Broome indicated that the Plaintiff: would need daily bedrest, would require more than the standard breaks from work, and could not be expected to be reliable in attending a standard workweek in light of his pain. [Tr. 244]. While Dr. Broome estimated the Plaintiff's pain was only moderately severe, he marked the opinion boxes indicating that the Plaintiff's pain would cause lapses in concentration for several hours three or more times a week. [Tr. 244]. Dr. Broome estimated that the Plaintiff would be expected to be absent from work fifteen to twenty times per month. [Tr. 245]. Finally, Dr. Broome commented that "orthopedic/neurologic problems of cervical & lumbar spine limit [the Plaintiff's] mobility." [Tr. 245].

The Plaintiff correctly notes that the ALJ did not specifically state the weight accorded to the November 2003 opinion form. However, the ALJ's ultimate decision indicates that the November 2003 opinion was not fully credited. The ALJ's only comment about his decision to discount the opinion is that he found Dr. Broome's "report and residual functional capacity he supplied does [sic] not match his treatment notes." [Tr. 17]. The ALJ found that the November 2003 opinion was not consistent with Dr. Broome's later notes from visits that occurred between May 5,

9

2005, and July 27, 2006. However, the ALJ did not cite any specific entries that were inconsistent with this assessment. Instead, he explained that Dr. Broome's records included notes made by Dr. Dudney, a sleep apnea specialist, who stated that on November 9, 2005, the Plaintiff reported walking two to five miles per day. The ALJ concluded that Dr. Dudney's reporting "is confirmed by treatment notes of August 17, 2005 by Dr. Broome that claimant **was trying** to walk 2 miles a day and showing his weight as 272 pounds." [Tr. 17 (emphasis added)].

Initially, the Court notes that the Medical Opinion forms, like the ones Dr. Broome completed, are questionnaires that require a physician to mark the severity of a functional restriction on a scale that is provided—i.e. patient can complete a given task "never," "infrequently," "occasionally," or "frequently"—and require the physician to answer a series of yes or no and short-answer questions. At the end of the form, a space is provided for additional comments. Such an evaluation makes it difficult to determine whether the opinion is well-supported by clinical and laboratory diagnostic techniques, objective tests, or other evidence in the record, 20 C.F.R. § 404.1527(d)(2) and 416.927.

Nonetheless, comparing Dr. Broome's evaluation to his notes from visits in late 2003, does not reveal inconsistency. Instead, notes from a physical examination in November 2003 find that the Plaintiff suffers from cervical spondylosis, [Tr. 279], a diagnosis consistent with Dr. Broome's statement on the opinion form that orthopedic and neurologic problems in the Plaintiff's cervical and lumbar spine limit his mobility, [Tr. 245]. Looking at the notes cited by the ALJ, the Court first finds that these were made almost two years after the opinion form was completed, and thus, while they may demonstrate that the Plaintiff's condition had improved, it is difficult to accept these notes as a direct contradiction to the opinion form. Similarly, Dr. Dudney's observations, again made two

10

years later, pertain to the condition's persistence and the consistency of Dr. Broome's opinion with the evidence as a whole. However, Dr. Dudney's notes do not directly support the single reason for discounting cited by the ALJ— namely, that Dr. Broome's opinion should be discounted because it is inconsistent with Dr. Broome's own notes.

Further, the Court, taking Dr. Broome's notes, Dr. Dudney's notes, and the Plaintiff's statements at the hearing together, finds that the walking issue/inconsistency, which the ALJ focused upon both in discounting Dr. Broome's opinion and, apparently, in discounting the Plaintiff's testimony, was likely a mistake by Dr. Dudney rather than an actual inconsistency. Dr. Dudney noted that the Plaintiff reported he was walking two to five miles per day. [Tr. 391]. The ALJ coupled this information with the fact that the Plaintiff had lost almost forty pounds, and discredited both Dr. Broome's and the Plaintiff's credibility, because both the Plaintiff and Dr. Broome had estimated the Plaintiff walked less than two miles per day.

At the hearing, the Plaintiff offered a credible explanation for why Dr. Dudney may have mistakenly stated that the Plaintiff reported walking two to five miles per day. The ALJ and the Plaintiff had the following exchange regarding his ability to walk distances:

> Q: Do you have any, do you get any regular exercise?
>
> A: I try to walk about half a mile a day.
>
> Q: Okay. I saw in the treatment note back in November of 2005 you were walking two to five miles a day.
>
> A: I never walked that much. I walk about a half to a mile at most.
>
> Q: Okay. How long does that take you?
>
> A: I kind of break it up and do some in the morning and a couple of trips up the hill and back. We live on a little dead-end

11

>                       road, and I walk from my son's house to the cemetery--
>
> Q:    Uh-huh.
>
> A:    – four times a day, and it's about an eighth of a mile. And I would say the reason it says two to five miles I, I said that I would walk between two and five times a day.

[Tr. 459]. While the Court will address the Plaintiff's credibility below, the Court finds that this explanation and Dr. Broome's statements are, at the very least, consistent and viable explanations for why Dr. Dudney, a physician whose treatment relationship with the Plaintiff was short-lived compared to Dr. Broome's, may have mis-spoken regarding the Plaintiff's exercise. More importantly, the Court cannot reconcile how Dr. Dudney's statement about the Plaintiff's exercise and the Plaintiff's weight loss support the ALJ's single reason for discounting, which was that Dr. Broome's "report and residual functional capacity . . . [do] not match his treatment notes."

Turning to Dr. Broome's other submissions, Dr. Broome also submitted a second opinion dated April 29, 2004. The ALJ in discounting this opinion form stated, "Once again, the undersigned finds that the residual functional capacity which Dr. Broome provides, does not match [his] treatment notes and that this assessment indicates an increase in claimant's abilities in some areas . . . ." [Tr. 18]. Initially, the Court finds that this reference back to the prior "inconsistency" argument is, for the reasons explained above, not supported by the evidence cited by the ALJ or the evidence of record.

In addition, this opinion completed in April 2004 states that it assesses the Plaintiff's disability *through December 31, 2001*. Thus, it addresses only three months that would be pertinent to the disability determination in this case October, November, and December of 2001. While both the ALJ and the Commissioner specifically cite the "improvement" between the November 2003

12

opinion and April 2004 opinions as evidence of the inconsistency of Dr. Broome's opinion, [Doc. 16 at 11, Tr. 18], this argument holds no weight since the April 2004 opinion was meant to evaluate, albeit *post hoc*, the Plaintiff's symptoms prior to December 31, 2001.

Finally, the ALJ considered a letter from Dr. Broome dated February 8, 2005, which states:

> Ernest Lester has widespread degenerative arthritis throughout his spine. These changes cause much pain and limit the mobility from his neck down into his low back. He is unable to perform activities of bending, stooping, lifting, and walking more than short distances. I believe he is currently disabled from any form of gainful employment.

[Tr. 293]. The ALJ never gave specific reasons for discounting this particular letter, but later reiterated the evidence he believed supported discounting Dr. Broome's opinion, i.e. his weight loss and Dr. Dudney's notation. Thus, the Court is led to believe this letter was discounted for the same reasons, and for the same reasons, the Court finds that this decision to discount is not supported by substantial evidence.

Finally, the Court notes that in contrast to Dr. Dudney's opinion, other evidence of record demonstrated the Plaintiff's cervical and spinal conditions, though to a less severe degree than indicated by Dr. Broome. For example, in July 2003, Plaintiff was evaluated by Stephen Natelson, M.D. ("Dr. Natelson").[2] Dr. Natelson reviewed diagnostic testing in August 2003, and noted that Plaintiff had cervical and lumbar findings. [Tr. 224.] After further diagnostic testing, Dr. Natelson noted that Plaintiff had multi-level degenerative changes, cervical spondylosis and disk protrusion, and mild to moderate stenosis. [Tr. 224.]

---

[2] The Plaintiff had seen Dr. Natelson prior to his 2003 visit. However, as Dr. Natelson noted, the Plaintiffs last visit was on March 14, 2001, prior to the alleged onset date of October 1, 2001.

13

Further, in May 2003, Jeffrey Summers, M.D., ("Dr. Summers") evaluated Plaintiff at the request of the state agency. [Tr. 106-10.] Dr. Summers concluded that Plaintiff would have difficulty bending at the waist, stooping, kneeling, squatting, climbing, and lifting more than 20 pounds. [Tr. 108.] Dr. Summers was also of the opinion that Plaintiff would have difficulty standing or walking longer than 30 to 45 minutes continuously or more than six hours total in a workday; and was limited in his ability to twist/turn his head and elevate his arms above shoulder level on a frequent basis. [Tr. 108.]

For all the reasons stated above, the Court finds that the ALJ, first, did not accord Dr. Broome's opinion controlling weight, and even assuming Dr. Dudney's observation about the Plaintiff's exercise constituted substantial evidence demonstrating that Dr. Broome's opinion was inconsistent with the record, 20 C.F.R.§§ 404.1527(d)(2) and 416.927, the ALJ did not thereafter discuss any of the factors for determining what weight should be afforded to Dr. Broome's opinion. The ALJ made a short, conclusory assertion that Dr. Broome's opinion was inconsistent with his notes, but cited only, generally, notes made almost two years after the first opinion was issued.

The Court acknowledges that the opinion forms completed by Dr. Broome are often subject to discounting because their structure lends itself to opinions being made without citation to medical evidence, the ALJ must still give good reasons for discounting these opinions, especially when they are submitted by a long-term treating physician and from the Court's review of the record appear to be consistent with the visit notations made by the physician at the time. The Court further acknowledges that Dr. Broome's opinions about the Plaintiff being disabled are outside of his expertise and speak to an issue reserved for the Commissioner. See Walker, 980 F.2d at 1070. However, even disregarding these assertions, the ALJ must give "good reasons" for discounting

14

the medical opinions expressed by the physician. The Court finds that the ALJ has failed to do so.

*B. The Credibility of Plaintiff's Statements of Pain and Functional Limitations*

The Plaintiff next contends that the ALJ erred in failing to explain his decision to find Mr. Lester's statements were not entirely credible. [Doc. 14.] The Commissioner maintains that "the ALJ reasonably considered Plaintiff's allegations and testimony and articulated the weight given those statements in the context of the record as a whole." [Doc. 16.] The Commissioner notes that the ALJ's credibility determination is entitled to considerable deference, and reviewing courts do not generally make de novo credibility findings. See Gooch v. Sec'y of Health and Human Servs., 833 F.2d 589, 592 (6th Cir. 1987).

The applicable regulations instruct claimants that "[b]ecause symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions which you, your treating or nontreating source, or other persons report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account in reaching a conclusion as to whether you are disabled." 20 C.F.R. § 404.1529(c)(3). In weighing the credibility of statements regarding functional limitations and restrictions, the ALJ is to consider: the claimant's daily activities; the location, duration, frequency, and intensity of pain and other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken for pain or other symptoms; treatment other than medication, that the claimant has received for the condition, and any other measures taken to relieve the pain or symptoms.(c)(3)(i)-(vi). Ultimately, credibility determinations rest with the ALJ. Siterlet v. Sec'y of Health and Human Servs., 823 F.2d 918, 920 (6th Cir. 1987).

In his opinion, the ALJ recited the Plaintiff's testimony including his statement that he tries to walk half a mile per day divided into different attempts, that he does no housework, that his son must shave him and assist him in dressing, and that he can sit or walk for ten to fifteen minutes without pain. [Tr. 17]. The ALJ then stated in a single-sentence paragraph, that after weighing the medical opinions, testimony, and other evidence in the record the ALJ found that in light of this analysis, the Plaintiff's "medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." [Tr. 17]. Thereafter, the ALJ discussed Dr. Broome's assessment.

While the ALJ's credibility determination is entitled to considerable deference, it, nonetheless, must "contain specific reasons for the finding on credibility, supported by the evidence in the case record" and must be "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to [claimant's] statements and the reasons for that weight." White v. Comm'r. of Soc. Sec., 312 Fed. App'x 779, 789 (6th Cir. 2009) (quoting Rogers, 486 F.3d at 248-49 and Soc. Sec. Rul. 96-7p).

In this case, the ALJ's determination is not sufficiently specific to enable a future reviewer, such as this Court, or the Plaintiff himself to understand the reasons the Plaintiff's statements were discredited. As previously stated, the ALJ's credibility determination was contained in a single-sentence paragraph that did not reference any evidence or statements that would undermine the Plaintiff's testimony. The paragraph preceding the credibility determination is a recitation of the Plaintiff's testimony, and the paragraph following the credibility determination reviews Dr. Broome's opinion. There is simply no explanation of the credibility determination. The Plaintiff

explained his conditions and the effect of the alleged conditions and accompanying pain on his daily activities in great detail. In accordance with the applicable regulations and the Court of Appeals for the Sixth Circuit, the ALJ was required to, in at least some detail, explain why he did not credit these statements. The ALJ failed to do so, and accordingly he did not conform to the proper legal standards.

## V. CONCLUSION

Accordingly, the Court finds that ALJ did not comply with the applicable rules and regulations in making and explaining his findings and conclusions, and the Court concludes that the ALJ's decision is not supported by substantial evidence. Therefore, the Commissioner's Motion for Summary Judgment **[Doc. 15]** is hereby **DENIED**, and the Plaintiff's Motion for Summary Judgment **[Doc. 13]** is **GRANTED**. Accordingly, this case shall be **REMANDED** for further consideration and/or explanation of the ALJ's decision to disregard Dr. Broome's opinion and discredit the Plaintiff's statements.

**IT IS SO ORDERED**.

**ENTER:**

<u>s/ Thomas W. Phillips</u>
United States District Judge